COURT OF APPEALS
DECISION
DATED AND FILED

July 18, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP175**

**STATE OF WISCONSIN**

Cir. Ct. No. 2021CV111

**IN COURT OF APPEALS
DISTRICT I**

---

WISCONSIN MANUFACTURERS AND COMMERCE, INC.,

PLAINTIFF-RESPONDENT-CROSS-APPELLANT,

V.

WISCONSIN DEPARTMENT OF NATURAL RESOURCES, PRESTON COLE AND WISCONSIN NATURAL RESOURCES BOARD,

DEFENDANTS-APPELLANTS-CROSS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Jefferson County: WILLIAM F. HUE, Judge. *Reversed and cause remanded with directions; appeal dismissed*.

Before Donald, P.J., Dugan and White, JJ.

¶1    WHITE, J. The Wisconsin Department of Natural Resources (DNR)[1] appeals from the order granting partial summary judgment in favor of Wisconsin Manufacturers and Commerce, Inc. (WMC), and WMC cross-appeals from the same order with regard to the partial summary judgment granted to the DNR. Because the underlying controversy relating to the testing and regulation of effluent raised in WMC's complaint has been resolved through the rulemaking process and the resulting regulations were effective as of August 1, 2022, we conclude that this appeal is moot. Therefore, we vacate the circuit court order, and we remand with directions to dismiss this case as moot. Additionally, we dismiss this appeal.

## BACKGROUND

¶2    In March 2021, WMC sued the DNR to stop it from conducting a sampling program as part of the permanent rulemaking process to develop surface-water quality regulatory criteria for polyfluoroalkyl and perfluoroalkyl compounds (known as PFAS).[2] The sampling data would be included in the economic-impact

---

[1] WMC filed this action against the Department of Natural Resources, a Wisconsin state agency; the Wisconsin Natural Resources Board, a Wisconsin state board that sets policy for the Department; and Preston Cole, then secretary of the Department. Unless the individual actor is relevant to the discussion, we refer to the defendant-appellants collectively as the DNR.

[2] While we will refer to the effluents at issue collectively as PFAS, we quote from the DNR's Statement of Scope from its rulemaking process:

(continued)

analysis for new administrative rules to regulate the PFAS compounds. As part of the sampling program, the DNR required certain Wisconsin Pollutant Discharge Elimination System (WPDES) permit holders to allow DNR staff to enter their facilities and obtain samples of effluent from the permit holder's facility.[3]

¶3 Along with the complaint filed on March 29, 2021, WMC filed a motion for an ex parte temporary restraining order (TRO) and temporary injunction on the DNR's actions. The circuit court granted an ex parte TRO on March 30, restraining the DNR from "implementing or enforcing their PFAS sampling program as described in [WMC's] complaint."

¶4 After a hearing, the circuit court refined the TRO by order on April 5, 2021. The revised TRO restrained the DNR "from releasing any information regarding their PFAS sampling program … including results from the

---

> Poly- and perfluoroalkyl substances (PFAS) are human-made, organic compounds that have been manufactured for use in non-stick coatings, waterproof fabrics, firefighting foams, food packaging, and many other applications since the 1940s. PFAS are highly resistant to degradation and … have documented toxicity to animals and because epidemiological studies have suggested probable links to several human health effects…. Thus, the primary objective of this rule is to create human health surface water quality criteria for perfluorooctane sulfonate (PFOS) and perfluorooctanoic acid (PFOA), as well as any other PFAS which the department determines may be harmful to human health in [WIS. ADMIN. CODE § NR ch. 105].

[3] Our supreme court explained that "[t]he WPDES permit program is outlined in ch. 283 of the Wisconsin Statutes [2021-22], wherein the DNR is granted 'all authority necessary to establish, administer and maintain a state pollutant discharge elimination system' in order to protect the 'waters of this state,' including groundwater and surface water, from pollution." *Clean Wisconsin, Inc. v. DNR*, 2021 WI 71, ¶17, 398 Wis. 2d 386, 961 N.W.2d 346.

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

testing of such samples already secured or the corresponding identities of the businesses or facilities from which those samples were taken." The following day, on April 6, 2021,[4] the court entered a temporary injunction order that temporarily enjoined the DNR from disseminating information outside of the DNR that would connect an individual test sample to individual facilities, for those samples collected after April 1, 2021. The temporary injunction further set forth that the DNR "may only disclose anonymized test results. Such anonymized test results may be disclosed publicly for any purpose, including by including them in an economic impact analysis prepared and publicly disclosed as part of ongoing PFAS administrative rulemaking efforts."

¶5     In August 2021, WMC and the DNR each moved for summary judgment. After oral arguments by the parties in December 2021, the circuit court issued a written decision in January 2022. The circuit court's order granted and denied summary judgment to each party under various claims and theories of law, which we recite below.

¶6     The circuit court granted summary judgment to WMC (and denied the same to the DNR) on the following: (1) the DNR did not have independent sampling authority to engage in this sampling program by WIS. STAT. § 227.137,

---

[4] The appellate record does not explain how or why the injunction changed. The CCAP entry for this case shows an additional telephone hearing on April 6, 2021, with the case notes stating that the "parties have come to agreement to stipulate to the entry of a Stipulated Temporary Order, which resolves issue[s]" discussed at the previous hearing. Because there are no arguments that this order was contested, we presume that the parties stipulated to the terms of the injunction.

CCAP stands for Wisconsin's Consolidated Court Automation Programs, which displays information entered by court staff on a website interface. *Kirk v. Credit Acceptance Corp.*, 2013 WI App 32, ¶5 n.1, 346 Wis. 2d 635, 829 N.W.2d 522. An appellate court may take judicial notice of the CCAP records. *See* WIS. STAT. § 902.01; *Kirk*, 346 Wis. 2d 635, ¶5 n.1.

which governs the economic-impact analysis process, or under WIS. STAT. § 283.55(2)(a), which governs access to monitoring equipment and records for WPDES permit holders; and (2) the DNR was not authorized to prohibit or set standards for any pollutant, unless and until it promulgates rules for that pollutant, under WIS. STAT. § 283.11(1).

¶7     The circuit court granted summary judgment to DNR (and denied the same to WMC) on the following:  (1) the DNR had independent sampling authority under WIS. STAT. § 283.55(1)(e), which discusses the DNR's scope of authority over WPDES permit holders; and (2) the court concluded that in the absence of a record request, WMC's request to block the release of the sampling data on a public records theory was not ripe for "conclusive adjudication."

¶8     The court also determined two issues entitled each party to a partial grant and partial denial of summary judgment.  First, while the DNR "may test effluent from any WPDES facility for any toxic substance it has identified, post rule promulgation," the PFAS compounds had not been designated toxic substances, with discussion of WIS. ADMIN. CODE § NR 205.07(1)(d) (April 2018).  Second, the DNR had authority under the federal Clean Water Act and as a designee of the Environmental Protection Agency to sample effluents for the purpose of developing regulations and standards for effluent or pollutants including PFAS compounds; however, those results could only be used for informational purposes to develop new effluent standards.

¶9     The court dismissed all matters for which the DNR was granted summary judgment.  The circuit court granted a declaratory judgment to WMC on the matters upon which it had prevailed, but denied a permanent injunction.

¶10 The DNR and WMC cross-appeal the summary judgment order.[5] During the pendency of this appeal, the DNR completed the rulemaking process and the DNR promulgated the relevant rules for PFAS compounds that were effective in August 2022. *See* 799B Wis. Admin. Reg. (July 25, 2022).

## DISCUSSION

¶11 The DNR argues that this case is moot and the appeal should be dismissed. The DNR contends that this issue is moot because WMC filed the underlying action to stop the DNR from collecting and testing effluent samples from WPDES permit holder facilities as part of its data gathering for the economic-impact analysis and that analysis has been completed and the subsequent rules about PFAS have been promulgated. Conversely, WMC argues that this case is not moot because the DNR could revive the sampling program and the issue of the DNR's authority to conduct a sampling program should be determined.

---

[5] Initially, the DNR appealed and moved the court to stay its order until the final resolution of all appeals. The DNR argued that the court's opinion altered the DNR's ability to enforce state laws in WIS. STAT. chs. 281 and 283 related to toxic pollutants, particularly to implement and enforce water quality standards for the WPDES program consistent with state and federal law. The circuit court issued a clarification order, stating it was not the court's intention to affect the DNR in the way alleged. It set forth that its opinion and judgment was limited to the claims pleaded in WMC's complaint, "the lawfulness of DNR's 'PFAS sampling program related to their rulemaking.'" It stated that any discussion of the DNR's "authority regarding toxic pollutants was limited to the context of this case and, in particular, the sampling program challenged" by WMC. It concluded that its decision was not "intended to alter, limit, or otherwise opine on DNR's authority regarding toxic pollutants beyond the scope of the sampling program challenged herein." It further stated that "nothing in the Court's opinion and judgment is intended to alter, limit, or otherwise opine on DNR's authority to enforce water quality standards, or DNR's authority to require compliance with water quality standards and limitations as a condition of WPDES permits[.]" As a result of this order, we conclude that the circuit court's declaratory judgments were limited to the controversy raised in WMC's complaint about the sampling program for PFAS compounds.

¶12　"Mootness is a doctrine of judicial restraint." ***Marathon Cnty. v. D.K.***, 2020 WI 8, ¶19, 390 Wis. 2d 50, 937 N.W.2d 901. "An issue is moot when its resolution will have no practical effect on the underlying controversy." ***PRN Assocs. LLC v. DOA***, 2009 WI 53, ¶25, 317 Wis. 2d 656, 766 N.W.2d 559. Whether an issue is moot is a question of law we independently review. ***Portage Cnty. v. J.W.K.***, 2019 WI 54, ¶10, 386 Wis. 2d 672, 927 N.W.2d 509. "Appellate courts generally decline to reach moot issues, and if all issues on appeal are moot, the appeal should be dismissed." ***Id.***, ¶12.

¶13　WMC contends resolving this appeal on the merits would have a practical effect on the underlying controversy. WMC challenged the DNR's legal authority to enter the private property of WPDES permit holders and collect effluent samples. It argues that the circuit court's declarations regarding the DNR's authority pursuant to various statute and rules should be affirmed. Conversely, the DNR argues that the fractured decision by the circuit court to grant and deny summary judgment under various statutes and rules does not have any practical effect on the controversy raised in the complaint and upon which the original injunction was sought. The record reflects that the circuit court issued a clarification order after the judgment that its order was limited to the claims pleaded in WMC's complaint and that any discussion of the DNR's "authority regarding toxic pollutants was limited to the context of this case and, in particular, the sampling program challenged" by WMC. Because the court clarified that its order did not opine on the DNR's authority outside of the context of this complaint, we limit our review to the controversy raised by WMC's complaint—the sampling program of PFAS compounds for the economic-impact analysis.

¶14　The DNR argues that there is no live controversy. The DNR points out that the rulemaking process has concluded. There is no allegation that the

DNR failed to comply with the terms of the circuit court injunction during the economic impact analysis and rulemaking process.[6] Now the DNR explains that the "final rules have undergone public review and comment, been approved by the Natural Resources Board and the Governor, and moved successfully past the legislative review stage." The new rules became effective on August 1, 2022.

¶15 We agree that there is no live controversy. WMC's complaint challenged the DNR's authority to conduct a sampling program of PFAS compounds before rules and regulations on PFAS had been promulgated in the formal rulemaking process. The controversy here was over a specific sampling program and specific analysis of statutes and rules. It was not a broad attack on the DNR's authority to regulate or sample effluent. Having promulgated rules under the required process, there is no situation in which the DNR could conduct this sampling program again—WMC's complaint is that there were no previous rules about PFAS compounds and currently there are. Further, WMC's arguments to the circuit court focused on damage from identifying effluent sample data at individual facilities. That concern was managed by the temporary injunction.

---

[6] The DNR argues that WMC did not appeal the circuit court's decision in the TRO and injunction to allow the DNR to continue the sampling program or to use the sampling data in the economic impact analysis; therefore, it is too late to object now. While we are persuaded that there is not a live controversy here, the DNR's position is not persuasive. First, the April 2021 order was reached by stipulation among the parties according to the CCAP entry. From that, and from a lack of argument by WMC, we conclude that WMC acquiesced to the continuation of the sampling program and the inclusion of the sampling data in the economic-impact analysis. The record leaves unanswered why WMC stipulated to the temporary injunction terms and we note that WMC does not ask this court to revisit that order.

Further, the DNR argues that WMC did not appeal the denial of the permanent injunction in the circuit court summary judgment order. We note that the circuit court stated in its reasoning that it is presumed that a state administrative agency will adhere to the court's declaration of the interpretation of various statutory and regulatory provisions, without the use of an injunction. The record reflects that WMC appealed the court's judgments in the DNR's favor. We do not conclude that WMC is neglecting its rights.

WMC does not complain that the DNR failed to comply with the temporary injunction. Accordingly, we conclude that the completion of the rulemaking process made the underlying circuit court case moot and, without a live controversy, this appeal is moot and must be dismissed.

¶16 Alternatively, WMC argues that even if this underlying controversy is moot because of the conclusion of the rulemaking process, several exceptions to the mootness doctrine apply. There are five established exceptions to the mootness doctrine, under which we may overlook mootness and review the issue on the merits. *D.K.*, 390 Wis. 2d 50, ¶19. The first exception is if the issues in the appeal "are of great public importance." *G.S. v. State*, 118 Wis. 2d 803, 805, 348 N.W.2d 181 (1984). The second exception is when the issue involves "the constitutionality of a statute." *Id.* The third exception is when "the precise situation under consideration arises so frequently that a definitive decision is essential to guide the trial courts." *Id.* The fourth exception is if "the issue is likely to arise again and should be resolved by the court to avoid uncertainty." *Id.* The final exception is whether the issue is "a question is capable and likely of repetition and yet evades review because the appellate process usually cannot be completed and frequently cannot even be undertaken within a time that would result in a practical effect upon the parties." *Id.*

¶17 WMC argues that the first, fourth, and fifth exceptions apply. We discuss, and reject, each in turn. First, WMC argues that the question of the DNR's sampling authority is an issue of great importance, the first exception. The DNR does not dispute that the issue is important, but does dispute that a resolution on the merits would resolve any controversy. The DNR argues that WMC is raising hypothetical issues requiring future resolution. "The general rule is that a court will not render a decision in a moot case because it would be advisory and a

court acts only to determine actual existing controversies and not to announce abstract principles of law." *Hahner v. Board of Ed.*, 89 Wis. 2d 180, 185-86, 278 N.W.2d 474 (Ct. App. 1979). Therefore, we agree that while this issue may be important, it does not satisfy the first mootness exception because it is no different from any other important and unresolved hypothetical controversy, upon which courts consistently decline to opine. *See City of Racine v. J-T Enters. of Am., Inc.*, 64 Wis. 2d 691, 702, 221 N.W.2d 869 (1974).

¶18    Second, WMC argues that "the issue is likely to arise again and should be resolved by the court to avoid uncertainty," the fourth exception to mootness. *G.S.*, 118 Wis. 2d at 805. WMC acknowledges that the DNR has completed its sampling program for PFAS compounds, but it argues that the DNR is likely to engage again in sampling programs when it alleges a need to study or regulate emerging contaminants and potential dangers. WMC contends that the DNR will revive this type of sampling program and therefore, this court should establish the legal parameters of the DNR's authority.

¶19    The DNR argues that WMC's support that the sampling program may be revived is purely hypothetical and not rooted in facts. In this appeal, WMC cited to rulemaking scope statements related to PFAS compounds as evidence that the DNR's sampling programs may recur; however, the record reflects that those scope statements are not connected to the water-surface rules at issue in this case and further, any eventual rulemaking would be driven by different statutes and rules. *See* WIS. ADMIN. CODE § NR ch. 809 (July 2022). The DNR asserts that if another controversy arises out of a new sampling program, it would be a new controversy that could be brought to court. As has been often stated, "it is our job to adjudicate the dispute in front of us." *State v. Steffes*, 2013 WI 53, ¶27, 347 Wis. 2d 683, 701, 832 N.W.2d 101. It is not our job to consider

hypotheticals raised by WMC. While a generic concern about the DNR's authority may recur, there is no uncertainty about the sampling program, the economic-impact analysis, or the rulemaking at issue in WMC's complaint. WMC's concerns about what the DNR might do regarding other effluent pollutants or contaminants is not the controversy raised in WMC's complaint. Therefore, this specific issue will not arise again and there is no uncertainty that the court can avoid by addressing hypothetical, future sampling of different substances. *See G.S.*, 118 Wis. 2d at 805. We conclude that WMC has failed to show that the fourth exception to mootness applies.

¶20    Finally, WMC argues that the sampling program is an issue likely to arise again and it evades review, the fifth exception to mootness. "The '"capable of repetition, yet evading review" doctrine' is limited to situations involving 'a reasonable expectation that the same complaining party would be subjected to the same action again.'" *J.W.K.*, 386 Wis. 2d 672, ¶30 (one set of quotations and citation omitted). WMC argues that if the DNR revives the sampling program, the same WMC member WPDES permit holders would face the same demand for sampling by the DNR.

¶21    To make this point, WMC argues that the DNR is an actor that "voluntarily ceases challenged conduct but retains the power to resume that conduct." *Cnty. of Dane v. Public Serv. Comm'n of Wisconsin*, 2022 WI 61, ¶26, 403 Wis. 2d 306, 976 N.W.2d 790 (leading op.). Further, it asserts that the DNR bears a "heavy burden" to prove the mootness of this case. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("The 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." (citation omitted)). WMC argues that if the DNR revived the sampling program, it

would evade review again because the DNR "would likely end the new sampling program before the appellate process could be completed."

¶22     The DNR disagrees that it bears a "heavy burden" to show mootness because it did not "cease" any conduct voluntarily.[7]  The DNR asserts that the sampling program, which transpired within the terms of WMC's temporary injunction, concluded with the completion of the rulemaking process in accordance with existing law, not by a voluntary withdrawal.  We consider WMC's reliance on this line of authority to be misplaced because this is not a situation where there is repeated conduct that is voluntarily withdrawn by the defendant.  There is no threat of this specific activity reoccurring as the sampling program has finished and the rules have been promulgated.  Even if the DNR proposed new rules and a new sampling program, it would not relate to the controversy at issue in this case.  Further, we are not persuaded that completing the rulemaking process set forth by the legislature is attempting to evade appellate review.  Accordingly, we conclude that WMC has failed to show that the fifth exception to mootness applies.

¶23     Ultimately, we conclude that the controversy over the sampling program related to PFAS compounds is moot because a resolution here will have no practical effect on the underlying controversy.  *See **PRN Assocs. LLC***, 317 Wis. 2d 656, ¶25.  Further, no mootness exceptions apply.  ***D.K.***, 390 Wis. 2d 50, ¶19.  WMC's arguments to the contrary rely on hypothetical questions about future DNR action.  A possible "future lawsuit cannot save this case from

---

[7] While we decline to weigh the heaviness of the DNR's burden, we conclude that the DNR has satisfied the burden to show that this issue is moot and there is no live controversy over which an appellate decision will have any practical effect.

mootness." *See United States v. Juvenile Male*, 564 U.S. 932, 937 (2011) (emphasis omitted). "We will therefore not depart from our general practice that this court will not offer an advisory opinion or make a pronouncement based on hypothetical facts." *State ex rel. Collison v. City of Milwaukee Bd. of Rev.*, 2021 WI 48, ¶46, 397 Wis. 2d 246, 960 N.W.2d 1.

## CONCLUSION

¶24 We conclude that the completion of the rulemaking process and the promulgation of the rules leaves no live controversy over the DNR's authority to sample and test effluent for purposes of preparing the economic-impact analysis on the regulation of PFAS compounds, as described in WMC's underlying complaint. As a result, we vacate the order of the circuit court and we remand with directions to dismiss the WMC's case as moot. Further, we dismiss this appeal. *See J.W.K.*, 386 Wis. 2d 672, ¶12.

*By the Court.*—Order reversed and cause remanded with directions; appeal dismissed.

Not recommended for publication in the official reports.