# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE No.: | 2019AP1987 |

| | |
|---|---|
| COMPLETE TITLE: | Lowe's Home Centers, LLC,<br>       Plaintiff-Appellant-Petitioner,<br>   v.<br>City of Delavan,<br>       Defendant-Respondent. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 400 Wis. 2d 542, 970 N.W.2d 568
(2022 – unpublished)

| | |
|---|---|
| OPINION FILED: | February 16, 2023 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 28, 2022 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Walworth |
|   JUDGE: | Daniel Steven Johnson |

JUSTICES:
ANN WALSH BRADLEY, J., delivered the majority opinion of the Court, in which ZIEGLER, C.J., ROGGENSACK, DALLET, HAGEDORN, and KAROFSKY, JJ., joined. REBECCA GRASSL BRADLEY, J., filed a concurring opinion, in which ROGGENSACK, J., joined.
NOT PARTICIPATING:

ATTORNEYS:

For the plaintiff-appellant-petitioner, there were briefs filed by *Thomas R. Wilhelmy, Daniel P. Deveny* and *Fredrikson & Byron, P.A.,* Minneapolis. There was an oral argument by *Daniel P. Deveny*.

For the defendant-respondent, there was a brief filed by *Lori M. Lubinksy, Danielle Baudhuin Tierney,* and *Axley Brynelson, LLP,* Madison. There was an oral argument by *Danielle Baudhuin Tierney*.

An amicus curiae brief was filed by *Jason P. Gehring, Dustin T. Woehl,* and *Kasdorf, Lewis & Swietlick, S.C.,* Milwaukee, on behalf of the Village of Plover, Wisconsin.

An amicus curiae brief was filed by *Misha Tseytlin, Kevin M. LeRoy,* and *Troutman, Pepper, Hamilton, Sanders LLP,* Chicago, on behalf of the Chamber of Commerce of the United States of America.

An amicus curiae brief was filed by *Scott E. Rosenow* and the *WMC Litigation Center,* Madison, on behalf of Wisconsin Manufacturers and Commerce, Inc.

An amicus curiae brief was filed by *Amy R. Seibel, Claire Silverman,* and *Seibel Law Offices, LLC,* Mequon, and the *League of Wisconsin Municipalities,* Monona, on behalf of the League of Wisconsin Municipalities. There was an oral argument by *Amy R. Seibel.*

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2019AP1987
(L.C. No. 2016CV589 & 2017CV432)

STATE OF WISCONSIN : IN SUPREME COURT

Lowe's Home Centers, LLC,

      Plaintiff-Appellant-Petitioner,

  v.

City of Delavan,

      Defendant-Respondent.

**FILED**

**FEB 16, 2023**

Sheila T. Reiff
Clerk of Supreme Court

---

ANN WALSH BRADLEY, J., delivered the majority opinion of the Court, in which ZIEGLER, C.J., ROGGENSACK, DALLET, HAGEDORN, and KAROFSKY, JJ., joined. REBECCA GRASSL BRADLEY, J., filed a concurring opinion, in which ROGGENSACK, J., joined.

---

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 ANN WALSH BRADLEY, J. The petitioner, Lowe's Home Centers, LLC, seeks review of an unpublished per curiam decision of the court of appeals affirming the circuit court's determination that the City of Delavan's assessments of Lowe's'

property for the 2016 and 2017 tax years were not excessive.[1] Lowe's contends that the City's assessments should not have received a presumption of correctness and that the assessments improperly excluded comparable properties for the sole reason that those properties were unoccupied.

¶2 Specifically, Lowe's contends that the City's assessments should not have received a presumption of correctness because, it argues, they were conducted in violation of the dictates of the Wisconsin Property Assessment Manual (the Manual). Further, it asserts that the vacant big-box retail locations it presented to the circuit court are comparable to the subject property and thus should have been considered in the City's assessments.

¶3 The City argues to the contrary, contending that the presumption of correctness was appropriately afforded to its assessments. It additionally asserts that the unoccupied properties Lowe's presented as comparable properties were properly excluded from the analysis.

¶4 We determine that the assessments in this case were properly afforded a presumption of correctness. Pursuant to Wis. Stat. § 70.49(2) (2019-20),[2] the presumption attaches upon

---

[1] Lowe's Home Centers, LLC v. City of Delavan, No. 2019AP1987, unpublished slip op. (Wis. Ct. App. July 28, 2021) (per curiam) (affirming the order of the circuit court for Walworth County, Daniel Steven Johnson, Judge).

[2] All subsequent references to the Wisconsin Statutes are to the 2019-20 version unless otherwise indicated.

the filing of the assessment along with the assessor's affidavit.

¶5 We further determine that Lowe's failed to demonstrate that the City's assessments were excessive. Giving deference to the circuit court's factual findings, including its credibility determinations, we conclude that Lowe's did not provide significant contrary evidence sufficient to overcome the presumption of correctness.

¶6 Accordingly, we affirm the decision of the court of appeals.

I

¶7 Lowe's is the owner of property in the City of Delavan. The property consists of 14.525 acres on which sits a 134,574-square-foot Lowe's Home Improvement store. Construction on the building was completed in 2005, and Lowe's has occupied the building since that time.

¶8 In 2013, the City assessor conducted a revaluation of the property, and arrived at an assessed value of $8,922,300. No changes were made to this value for purposes of the 2016 and 2017 assessments.

¶9 Lowe's challenged the City's assessments for 2016 and 2017. It sought a waiver of its hearing before the City's Board of Review and the Board granted the waiver, thereby disallowing

3

the claim.[3]  After its claim was disallowed, Lowe's filed this action under Wis. Stat. § 74.37(3)(d),[4] asserting that the assessments of its property for the 2016 and 2017 tax years were excessive and seeking to recover the excess amount it believed it had paid.

¶10  The circuit court held a three-day bench trial on the matter.  At trial, City Assessor Luke Mack testified, as did the City's expert appraiser Scott Chapko.  Lowe's offered testimony from two experts, Michael MaRous and Brett Harrington.[5]

¶11  Mack testified regarding the method he employed for valuing the property for 2016 and 2017.  He described those assessments as "maintenance" assessments, which means that the property was not subject to a full revaluation.[6]  Mack further

---

[3] See Wis. Stat. § 70.47(8m) ("The board may, at the request of the taxpayer or assessor, or at its own discretion, waive the hearing of an objection . . . .  For purposes of this subsection, if the board waives the hearing, the waiver disallows the taxpayer's claim on excessive assessment under s. 74.37(3) and, notwithstanding the time period under s. 74.37(3)(d), the taxpayer has 60 days from the notice of the hearing waiver in which to commence an action under s. 74.37(3)(d).").

[4] Pursuant to Wis. Stat. § 74.37(3)(d), "[i]f the taxation district or county disallows the claim, the claimant may commence an action in circuit court to recover the amount of the claim not allowed."

[5] The circuit court's decision did not focus on Harrington's testimony.  Accordingly, although we briefly describe the testimony of the other witnesses, we do not recount that of Harrington.

[6] See Wis. Stat. § 70.05(5)(b) ("Each taxation district shall assess property at full value at least once in every 5-year period.").

4

testified that the prior assessment of the property, completed in 2013, was done using the cost approach,[7] that replacement costs were based on "Marshall and Swift cost data,"[8] and that market adjustments were applied for depreciation and additional obsolescence. He also compared the assessments to recent revaluations in other communities.

¶12 Lowe's' expert, MaRous, testified that the property should have been valued at a much lower level than the City had offered. In MaRous's opinion, the subject property had a fair market value of $4.6 million——just over half of the City's assessed value.

¶13 To arrive at this valuation, MaRous used the sales comparison approach. In doing so, he compared the Lowe's property to six other recently-sold properties that he had determined to be "comparable" to the Lowe's property.

¶14 Three of the six comparable sites MaRous identified (what MaRous termed sales one, three, and six) were former American TV locations. Two of these sites were sold to Steinhafel's furniture and one was sold and converted into a go-

---

[7] The "cost approach" to valuation "seeks to measure the cost to replace the property." Adams Outdoor Advert., Ltd. v. City of Madison, 2006 WI 104, ¶35, 294 Wis. 2d 441, 717 N.W.2d 803.

[8] Marshall and Swift "publishes materials used by appraisers and state and local taxing authorities." Marshall & Swift v. BS & A Software, 871 F. Supp. 952, 954 (W.D. Mich. 1994). The Marshall and Swift handbook has been described as a "standardized publication in the field of real estate." In Re Thompson, 18 B.R. 67, 69 (Bankr. E.D. Tenn. 1982).

kart racing track, bar, and restaurant.  All three were in receivership[9] when they were sold.

¶15  MaRous's comparable sale number two was a former K-Mart store that, by MaRous's testimony, had been vacant and marketed for "2 to 3 years" prior to being sold.  Comparable sale number four was a former Lowe's store in Brown Deer.  The property had been built in 2006 and vacated by Lowe's just five years later.  It sat vacant for two years before being purchased by Walmart in 2013.  MaRous further advanced that the "exposure time," or the length of time it takes a property to sell on the open market, for properties similar to the subject property in the same geographical area is two to three years.

¶16  Finally, MaRous offered comparable sale number five, a vacant former Target store.  This property was "vacant before the purchase for about four years."  It was ultimately purchased by a developer who "broke it up into two [lots] . . . because that's where the demand was."

¶17  The City countered Lowe's' expert with its own expert, Scott Chapko.  Chapko valued the property at $9.2 million, slightly higher than the assessed value.  Like MaRous, he arrived at this valuation using the sales comparison approach, although Chapko used different properties as comparables than MaRous used.

¶18  Chapko testified that he did not think it was appropriate to use "dark" stores or "distressed" properties to

---

[9] See Wis. Stat. ch. 128.

compare to the occupied Lowe's property.[10]  Accordingly, Chapko did not use any such properties in his analysis.  All of Chapko's submitted comparable sales were occupied at the time of sale and had market-rate leases in place.  None was sold under "duress," such as a bankruptcy or foreclosure.  Chapko additionally testified that the exposure time for a property like the subject property is in the "overall range of 2 to 18 months."

¶19 The circuit court ultimately upheld the City's assessments.  Specifically, it determined that "the evidence presented by Lowe's in this case is significantly less credible than that presented by the City when it comes to a proper value to be attached to this real estate for the years 2016 and 2017." In discussing MaRous's appraisal, the circuit court discounted

---

[10] The Manual discourages the use of "dark" and "distressed" properties "as comparable sales unless the subject property is similarly dark or distressed."  1 Wisconsin Property Assessment Manual 9-12 (2016).  Pursuant to the Manual, "[a] vacant store is considered dark when it is vacant beyond the normal time period for that commercial real estate marketplace and can vary from one municipality to another." Id.  As such, "vacant" and "dark" are not synonyms.  For further discussion on the distinction between "vacant" and "dark," see infra, ¶¶45-46. The Manual does not specifically define "distressed," but it counsels that "[a] recent court case stated distressed properties are not seen as meaningfully comparable to operating properties."  1 Wisconsin Property Assessment Manual 9-12 (citing Bonstores Realty One, LLC v. City of Wauwatosa, 2013 WI App 131, ¶¶21, 22, 34, 35, 351 Wis. 2d 439, 839 N.W.2d 893).

All references to the Wisconsin Property Assessment Manual are to the 2016 version unless otherwise indicated.

MaRous's claimed comparables two and five in that they "were both vacant beyond the 2-3 year window that Mr. MaRous apparently identifies as the normal exposure time for the Delavan area," classifying those properties as "dark" for this reason. It further explained:

> In that these two properties are dark they have a major deficiency when compared with the Lowe's store in question. Further, the fact that they were considered comparable sales at all is in apparent direct conflict with the [principles] outlined in the Manual stating not to use dark properties in performing an appraisal unless the subject property is also dark.

¶20 The circuit court also found unpersuasive MaRous's reliance on what it considered "distressed" properties. It observed:

> [H]alf of the comparable sales used by Mr. MaRous were in receivership. The Court might be able to overlook one comparable sale in receivership or under possible duress as an outlier if it was able to put that outlier in the context of five other properties without significant flaws, not in receivership, with similar adjusted values. However, the Court cannot do so here because of the number of properties in receivership and the flaws of the other non-receivership comparable sales.

¶21 Due to the "significant deficiencies" in MaRous's appraisal, the circuit court concluded that Lowe's had not provided significant contrary evidence that the City's valuation was excessive. Accordingly, it denied Lowe's' request for a refund of excessive taxes.

¶22 Lowe's appealed and the court of appeals affirmed the circuit court's decision. Lowe's Home Centers, LLC v. City of

8

Delavan, No. 2019AP1987, unpublished slip op. (Wis. Ct. App. July 28, 2021) (per curiam). Emphasizing that the circuit court "is the ultimate arbiter of credibility," the court of appeals concluded that "Lowe's has not overcome the presumption of correctness that attached to the City's assessments and that the record supports the circuit court's determinations in this case." Id., ¶¶43, 48. Lowe's petitioned for this court's review.

II

¶23 We are called upon to review the court of appeals' determination on an excessive assessment claim brought pursuant to Wis. Stat. § 74.37(3)(d). An action filed pursuant to § 74.37 seeks a trial before the circuit court, and is distinct from a certiorari action.[11] Metro. Assocs. v. City of Milwaukee, 2018 WI 4, ¶23, 379 Wis. 2d 141, 905 N.W.2d 784. Accordingly,

---

[11] Certiorari is a mechanism by which a court may test the validity of a decision rendered by a municipality, administrative agency, or other quasi-judicial tribunal. State ex rel. Anderson v. Town of Newbold, 2021 WI 6, ¶11, 395 Wis. 2d 351, 954 N.W.2d 323. Such a proceeding is "limited to the record before the board and addresses only whether the board's actions were: (1) within its jurisdiction; (2) according to law; (3) arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) supported by evidence such that the board might reasonably make the order or determination in question." State ex rel. City of Waukesha v. City of Waukesha Bd. of Rev., 2021 WI 89, ¶19, 399 Wis. 2d 696, 967 N.W.2d 460. In contrast, an excessive assessment action under Wis. Stat. § 74.37 is not confined to the record before the board and new evidence may be presented. Trailwood Ventures, LLC v. Village of Kronenwetter, 2009 WI App 18, ¶7, 315 Wis. 2d 791, 762 N.W.2d 841.

we review the circuit court's determination, not that of the assessor or Board of Review. Id.

¶24 In our review, we must interpret and apply Wis. Stat. §§ 70.32 and 70.49 to determine whether the appraisals at issue followed the statutory directives. Statutory interpretation and application present questions of law that we review independently of the determinations rendered by the circuit court and court of appeals. Id., ¶24.

¶25 Factual findings made by the circuit court will not be disturbed unless they are clearly erroneous. Id., ¶25. A finding of fact is clearly erroneous if it is against the great weight and clear preponderance of the evidence. Id., ¶62. It is within the province of the factfinder to make determinations of the weight and credibility of evidence. Id., ¶25.

III

¶26 We begin by setting forth the principles and methodology that guide property tax assessment in Wisconsin. Subsequently, we discuss the presumption of correctness to which an assessment is entitled. Finally, we address the City's assessments of Lowe's' property.

A

¶27 Valuation of real estate for tax assessment purposes is governed by Wis. Stat. § 70.32. State ex rel. Collison v. City of Milwaukee Bd. of Rev., 2021 WI 48, ¶23, 397 Wis. 2d 246, 960 N.W.2d 1. Pursuant to § 70.32(1), property shall be valued "in the manner specified in the Wisconsin property assessment manual." Subsection (1) further sets forth a hierarchical

valuation methodology for arriving at a property's fair market value.[12]  See State ex rel. Markarian v. City of Cudahy, 45 Wis. 2d 683, 685-86, 173 N.W.2d 627 (1970).

¶28 Wisconsin Stat. § 70.32(1) lists three sources of information that inform tax assessments.  The order in which these sources are listed is indicative of the quality of information each source provides.  Collison, 397 Wis. 2d 246, ¶24.  This methodology has been described as providing three "tiers" of analysis.  Metro. Assocs., 379 Wis. 2d 141, ¶31.

¶29 An arm's-length sale of the subject property is the best information of a property's fair market value, and is thus the first source of information to which an assessor should look in conducting an assessment.  Collison, 397 Wis. 2d 246, ¶25. Examination of a recent arm's-length sale is known as a tier 1 analysis.  Id.  If the property has not been recently sold, then the appraiser moves to a tier 2 analysis, examining recent

---

[12] In full, Wis. Stat. § 70.32(1) provides:

Real property shall be valued by the assessor in the manner specified in the Wisconsin property assessment manual provided under s. 73.03(2a) from actual view or from the best information that the assessor can practicably obtain, at the full value which could ordinarily be obtained therefor at private sale.  In determining the value, the assessor shall consider recent arm's-length sales of the property to be assessed if according to professionally acceptable appraisal practices those sales conform to recent arm's-length sales of reasonably comparable property; recent arm's-length sales of reasonably comparable property; and all factors that, according to professionally acceptable appraisal practices, affect the value of the property to be assessed.

11

arm's-length sales of reasonably comparable properties (the "sales comparison" approach). Id. It is this tier 2 analysis that is before us in this case.

¶30 Finally, when both tier 1 and tier 2 are unavailable, an assessor moves to tier 3, under which the assessor may consider all the factors collectively that have a bearing on the value of the property. Id., ¶26. These factors include cost, depreciation, replacement value, income, industrial conditions, location and occupancy, sales of like property, book value, amount of insurance carried, value asserted in a prospectus, and appraisals produced by the owner. Id.; State ex rel. Mitchell Aero, Inc. v. Bd. of Rev. of City of Milwaukee, 74 Wis. 2d 268, 278, 246 N.W.2d 521 (1976).

¶31 Property owners who are dissatisfied with the assessed value of their property may file an objection to the assessment with the municipal board of review. Wis. Stat. § 70.47(7); State ex rel. Nudo Holdings, LLC v. Bd. of Rev. for City of Kenosha, 2022 WI 17, ¶9, 401 Wis. 2d 27, 972 N.W.2d 544. The board of review is a quasi-judicial body that hears evidence and decides whether the assessor's valuation is correct. State ex rel. City of Waukesha v. City of Waukesha Bd. of Rev., 2021 WI 89, ¶16, 399 Wis. 2d 696, 967 N.W.2d 460. It is not an assessing body. Id. If a property owner remains dissatisfied after the board's decision, the property owner may appeal the

board's decision through one of three statutory avenues.[13] Id., ¶17. As relevant here, Lowe's brought an excessive assessment action under Wis. Stat. § 74.37.

B

¶32 With this background in hand, we next clarify the operation of the presumption of correctness to which assessments are entitled. As a starting point to the examination of a property owner's challenge to a tax assessment pursuant to Wis. Stat. § 74.37, the assessor's valuation is presumed to be correct. Wis. Stat. § 70.49(2); Metro. Assocs., 379 Wis. 2d 141, ¶50. Such a presumption may be rebutted if the assessor did not correctly apply the Manual and Wisconsin statutes or if a challenger presents significant contrary evidence. Metro. Assocs., 379 Wis. 2d 141, ¶50; Allright Props., Inc. v. City of Milwaukee, 2009 WI App 46, ¶12, 317 Wis. 2d 228, 767 N.W.2d 567.

¶33 However, Lowe's contends that the assessments in this case are not entitled to the presumption of correctness. Pointing to this court's statement that "[n]o presumption of correctness may be accorded to an assessment that does not apply the principles in the Property Assessment Manual," Walgreen Co. v. City of Madison, 2008 WI 80, ¶17, 311 Wis. 2d 158, 752

---

[13] The three options for property owners who wish to appeal a board decision are: (1) certiorari review pursuant to Wis. Stat. § 70.47(13), (2) a written complaint with the Department of Revenue to revalue the property under Wis. Stat. § 70.85, and (3) an excessive assessment action pursuant to Wis. Stat. § 74.37. City of Waukesha, 399 Wis. 2d 696, ¶17.

N.W.2d 687, Lowe's asserts that because the assessments here deviated from the Manual (an assertion which we will address below), the presumption does not attach in the first instance.

¶34 Lowe's misapprehends the application of the presumption. Its argument is incorrect as a matter of both statutory law and logic.

¶35 The statutory basis for the presumption, Wis. Stat. § 70.49(2), provides:

> The value of all real and personal property entered into the assessment roll to which such affidavit is attached by the assessor shall, in all actions and proceedings involving such values, be presumptive evidence that all such properties have been justly and equitably assessed in proper relationship to each other.

For our purposes, the key passage from the statute sets forth that the assessment becomes "presumptive evidence" when it is "entered into the assessment roll" and includes "such affidavit . . . attached by the assessor." § 70.49(2). The plain language of this provision thus compels only one conclusion: that the presumption of correctness attaches at the filing of the assessment by the assessor along with the required affidavit. See State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (setting forth that statutory interpretation begins with the language of the statute, and if the meaning is plain, "we ordinarily stop the inquiry").

¶36 Further, Lowe's' proffered analysis suffers from backward logic. Rather than apply the presumption and then

14

determine if significant contrary evidence overcomes the presumption, Lowe's would have us endorse an analysis that would first examine the evidence and make a determination as to whether the assessment complied with the Manual and only then determine whether the presumption applies.

¶37 This is not how a presumption works. If an assessment is conducted contrary to the dictates of the Manual, this does not merely mean that the presumption does not initially attach. If, in the context of a Wis. Stat. § 74.37 action, the failure to follow the Manual results in an excessive assessment, then the presumption is overcome and the assessment must be set aside.

¶38 We acknowledge that this court's cases have indicated that "[n]o presumption of correctness may be accorded to an assessment that does not apply the principles in the Property Assessment Manual." See Walgreen Co., 311 Wis. 2d 158, ¶17; Adams Outdoor Advert., Ltd. v. City of Madison, 2006 WI 104, ¶56, 294 Wis. 2d 441, 717 N.W.2d 803. However, Walgreen Co. did not cite Wis. Stat. § 70.49(2) and thus provides no insight into its application. Although § 70.49(2) was cited in Adams Outdoor Advertising, it was referenced only for the premise that the court "must give presumptive weight to the City's assessment." Adams Outdoor Advert., 294 Wis. 2d 441, ¶25. Given the plain language of § 70.49(2), we take the court's statements in Walgreen Co. and Adams Outdoor Advertising to mean not that the presumption does not initially attach to an assessment that does not follow the Manual's directives, but that the presumption is

15

overcome in such a situation. Indeed, it is apparent from the plain text of § 70.49(2) that the presumption attaches when the assessment is filed along with the proper affidavit.

¶39 We thus conclude that the assessments in this case were properly afforded a presumption of correctness. Pursuant to Wis. Stat. § 70.49(2), the presumption attaches upon the filing of the assessment along with the assessor's affidavit.

C

¶40 Having established that the presumption of correctness attaches to the assessments, we turn next to address whether Lowe's presented significant contrary evidence sufficient to overcome the presumption and demonstrate that the City's assessments were excessive.

¶41 Although Lowe's conceded at oral argument that "all the [proposed comparable] stores were vacant at the time they sold," it contends that the assessor deviated from the Manual by categorically excluding "vacant" and "dark" stores from a tier 2 sales comparison analysis. It further contends that it presented significant contrary evidence sufficient to overcome the presumption in the form of MaRous's appraisal.

¶42 In evaluating Lowe's' arguments, we examine first the relevant portions of the Manual. This case revolves around the question of what constitutes a "comparable" property in the context of a tier 2 sales comparison analysis. The sales comparison approach is "based on the premise that similar properties will sell for similar prices on the open market." 1 Wisconsin Property Assessment Manual 7-24.

16

¶43 The Manual "does not leave the determination of whether properties are reasonably comparable wholly to the discretion of an appraiser." Regency W. Apartments LLC v. City of Racine, 2016 WI 99, ¶61, 372 Wis. 2d 282, 888 N.W.2d 611. Accordingly, it provides some guidance as to how assessors are to evaluate whether property is indeed "comparable." Specifically, the Manual states: "Comparable sales refer to properties that are similar to the subject property in age, condition, use, type of construction, location, design, physical features and economic characteristics." 1 Wisconsin Property Assessment Manual 7-24. "The more similar the sold property is to the subject, the more reliable is the sale price as an indicator of the value of the subject property." Id.

¶44 Providing further specific guidance in the valuation of commercial properties through the sales comparison approach, the Manual states that "[w]hen valuing properties, the assessor should choose comparable sales exhibiting a similar highest and best use and similar placement in the commercial real estate marketplace." Id. at 9-12. The Manual additionally sets forth language that is critical to the issue presented in this case regarding the use of "vacant" and "dark" properties in commercial valuation:

> The assessor should avoid using sales of improved properties that are vacant ("dark") or distressed as comparable sales unless the subject property is similarly dark or distressed. A vacant store is considered dark when it is vacant beyond the normal time period for that commercial real estate marketplace and can vary from one municipality to

another. A recent court case stated distressed properties are not seen as meaningfully comparable to operating properties.

Id. (citing Bonstores Realty One, LLC v. City of Wauwatosa, 2013 WI App 131, ¶¶21, 22, 34, 35, 351 Wis. 2d 439, 839 N.W.2d 893).

¶45 Before continuing in our analysis, we take a brief detour to discuss the terminology that we employ. Some confusion has arisen due to inconsistent usage of the terms "vacant" and "dark." Although the court of appeals in this case seemingly used the terms interchangeably, they have different meanings.

¶46 We acknowledge that the Manual may not be a model of clarity on the subject, but its language does indicate that "vacant" and "dark" are not synonymous. The Manual states that "[a] vacant store is considered dark when it is vacant beyond the normal time period for that commercial real estate marketplace and can vary from one municipality to another." Id. Thus, "dark," as used by the Manual, is a subset of "vacant." In other words, all dark stores are vacant, but not all vacant stores are dark.

¶47 After this brief detour, we return to the parties' arguments. Lowe's' main argument before this court is that the circuit court erred in rejecting MaRous's proffered "comparable" properties for purposes of a tier 2 sales comparison analysis. Specifically, it contends that the property's vacancy status should not be considered, and that the property must be valued with respect to the owner's fee simple interest only. To

18

support this argument, Lowe's looks to Walgreen Co., 311 Wis. 2d 158.

¶48 In Walgreen Co., the business at issue, Walgreens, operated pursuant to a business model under which it would contract with a real estate developer to construct properties at Walgreens' direction. Id., ¶6. In return, Walgreens leased the properties from the developer at above-market rates to compensate for the developer's costs. Id.

¶49 When assessing property values, the City of Madison appraised the "leased fee interest," i.e., it considered the actual above-market contract rents in its analysis. Id., ¶10. In contrast, Walgreens advanced an appraisal that "appraised the fee simple interest in the two properties without consideration of the lease." Id. The court addressed the issue of "whether a property tax assessment of retail property leased at above market rent values should be based on market rents (as Walgreens argue[d]) or if such assessments should be based on the above market rent terms of Walgreens' actual leases (as the City argue[d])." Id., ¶2.

¶50 This court agreed with Walgreens. It determined, "consistent with the nationally recognized principle that '[a] lease never increases the market value of real property rights to the fee simple estate,'" that Wis. Stat. § 70.32(1) "proscribes assessing real property in excess of market value." Id., ¶3. The Walgreen Co. court also concluded that "an income approach assessment of a leased retail property's fair market value of the fee simple interest [must] be based on market lease

19

rates, not actual contract rates, as long as encumbrances to the property do not cause its leased fee value to fall below a market rate value." Id.

¶51 Lowe's argues that consideration of the occupancy status of a store in a valuation necessarily means that the value of the business is being taken into account rather than just the fee simple value of the land. It highlights the Walgreen Co. court's statement that "the valuation of the fair market value of property for purposes of property taxes is by its nature different from business, or income tax assessment." Id., ¶65. "[A]n assessor's task is to value the real estate, not the business concern which may be using the property." Id. (quoting Waste Mgmt. of Wis., Inc. v. Kenosha Cnty. Bd. of Rev., 184 Wis. 2d 541, 565, 516 N.W.2d 695 (1994)). Pointing to language in Walgreen Co. indicating that "a property assessor's task is to identify the market value of a fee simple interest," id., ¶20, Lowe's argues that consideration of vacancy status takes the assessor outside of these confines.

¶52 Walgreen Co. does not compel the outcome Lowe's seeks, and its holding is not as broad as Lowe's claims. The court in Walgreen Co. made a narrow determination regarding how above-market rent is to be treated for tax assessment purposes. As the City here argues, Walgreen Co. does not stand for the blanket proposition that occupancy or vacancy has no role to play in valuation.

¶53 Lowe's' argument misses the mark when it advances that accounting for the vacant nature of a store necessarily values

the business concern and not just the fee simple interest in the land. Many factors inform the value of land, including the land's viability to house a business. Saying that land is suitable for a successful business, or that the land has a track record of housing a successful business, and assigning a value to that fact is not the same as valuing the business itself. Generally, a site that can sustain a business is more valuable than one that cannot.[14] See also 1 Wisconsin Property Assessment

---

[14] This conclusion is echoed by a position paper published by the International Association of Assessing Officers (IAAO), an organization whose standards are incorporated into the Manual. See 1 Wisconsin Property Assessment Manual 1-3 ("Whether or not the IAAO Standards appear in the [Manual], the most current version in effect on January 1 of a given assessment year is incorporated by reference in the manual."); State ex rel. Collison v. City of Milwaukee Bd. of Rev., 2021 WI 48, ¶41, 397 Wis. 2d 246, 960 N.W.2d 1.

The IAAO states:

> If the subject property is occupied, that fact supports the premise that there is demand for the use for which the property was originally designed. Highest and best use is likely for the continued use of the property in its current use.
>
> . . .
>
> For retail properties, value is affected by size, age, condition, access, traffic counts, proximity to major employment centers, the concentration of surrounding properties, population size, and household purchasing power, to name just a few considerations. The competitive advantage of a property determines its relative position within the market. A property that has significant advantages over other properties of the same use because of location, demographics, and economic forces will command a higher price and rent.

Int'l Ass'n of Assessing Officers, Commercial Big-Box Retail: A Guide to Market-Based Valuation at 16 (Sept. 2017).

Manual 7-24 ("Comparable sales refer to properties that are similar to the subject property in age, condition, use, type of construction, location, design, physical features and economic characteristics.") (emphasis added); id. at 7-1 ("[T]he assessor must not consider only the physical attributes of the land and improvements but the intangible benefits that are associated with them.").

¶54 Further, a dark property is more likely to have characteristics that would make it less valuable than a property that was on the market for a shorter period of time. For example, if a building has been unoccupied for a long period of time, it is more likely to be in some kind of disrepair and in turn more likely to require significant investment to make it usable again.

¶55 The assessments in this case were consistent with the above provisions of the Manual and thus the circuit court was not obligated to reject the assessments. The circuit court determined that multiple properties on which Lowe's relied were not just vacant, but were dark. As to the dark properties on which Lowe's relies, the Manual counsels against using such properties as comparables to properties that are not similarly dark. Specifically, the Manual states: "The assessor should avoid using sales of improved properties that are vacant ('dark') or distressed as comparable sales unless the subject property is similarly dark or distressed." Id. at 9-12.

¶56 Further buttressing the application of this directive is the court of appeals' decision in Bonstores Realty One, LLC

22

v. City of Wauwatosa, 351 Wis. 2d 439, ¶¶20-22. In Bonstores, the court of appeals affirmed the circuit court's determination that an expert's opinion was unreliable because the opinion disregarded differences in the vacancy status of proffered comparable properties. Id., ¶22. Here, the circuit court's decision was similar to and consistent with that in Bonstores.

¶57 The Manual's directive that assessors "should avoid" use of vacant and dark properties in assessing occupied properties is consistent with general principles of real estate assessment. Specifically, real estate must be valued at its highest and best use. Collison, 397 Wis. 2d 246, ¶37. The highest and best use of a store in an area that is conducive to business (and is in fact operating as a business) is different from the highest and best use of a property that contains a failed big-box store. Lowe's' argument treats these different things alike, which is not the "apples to apples" comparison contemplated in a tier 2 analysis. See Bonstores, 351 Wis. 2d 439, ¶21.

¶58 In examining the distressed "comparable properties" in receivership on which Lowe's relies, Lowe's fares no better. Again, the Manual counsels against the use of such properties as comparable, and with good reason. See 1 Wisconsin Property Assessment Manual 9-12. A property in receivership is often sold under vastly different economic conditions and subject to vastly different incentives from a property that is not in receivership.

¶59 To explain, "[a] Wis. Stat. ch. 128 receivership provides a way to liquidate the assets of a business debtor in an orderly and controlled manner." Kristin K. Beilke et al., Collections and Bankruptcy in Wisconsin § 2.16 (3d ed. 2022). "The object and purpose of assignment law is to afford an equal distribution of the assignor's estate to all creditors in proportion to their claims." Linton v. Schmidt, 88 Wis. 2d 183, 198, 277 N.W.2d 136 (1979).

¶60 This court has stated that the assignee, or receiver, is "the trustee for both the debtor and the creditors; with the duty to administer the trust property so as to pay the creditors, as far as possible, their just claims, and then to account to the debtor for the surplus." Id. However, the receiver is "bound to look primarily to the interests of the creditors." Id. Given this responsibility, differing incentives come into play and a sale of receivership property may not reflect the same price as a similar property not in receivership would receive on the open market. For example, a receiver may be motivated to sell the property more quickly so as to secure timely payment of creditors and avoid the building falling into disrepair.

¶61 Receivership can thus result in a "distressed" sale. Although the mere fact of a receivership does not automatically affect a property's market value, a claim that a distressed property is comparable to an operating one should be subjected to a court's keen scrutiny. The circuit court was therefore not

obligated to accept MaRous's analysis that was based on an equivalency between distressed and operating properties.

¶62 Given the above analysis and the circuit court's evaluation of the evidence presented, Lowe's' contention that it presented significant contrary evidence sufficient to overcome the presumption of correctness in this case is ultimately unpersuasive. In evaluating comparable properties two and five, the former K-Mart and Target stores, the circuit court made a factual determination that both of these properties were "vacant beyond the 2-3 year window that Mr. MaRous apparently identifies as the normal exposure time for the Delevan area." Accordingly, it concluded that these properties were "dark" and determined that neither of these stores was comparable to the subject property. It observed that "[b]oth of these stores appear to fall within the category of 'dark' properties based on the extensive period of time during which they stood empty and were unable to be sold" given that they were "on the market for sale for a period of time beyond the normal exposure time needed to obtain market value." Thus, the circuit court concluded that these properties "have a major deficiency when compared with the Lowe's store in question." This "deficiency" was, in the circuit court's view, "significant," and "call[ed] into question the value of [MaRous's] appraisal as a whole."

¶63 Likewise, with regard to the distressed properties under receivership (comparables one, three, and six, the former American TV properties), the circuit court similarly made a factual determination, reaching the "inescapable conclusion"

25

that "American TV was going out of business, subject to a receivership, and needed to liquidate their assets." Under such conditions, the circuit court determined that these properties were not comparable to the subject property as MaRous advanced.

¶64 Lowe's contends that MaRous "exercised exceptional diligence in investigating the circumstances surrounding each sale" of properties in receivership, asserting that "each of the properties were sufficiently exposed to the market with high demand from numerous potential buyers, and that each of the consummated sales was an arm's length transaction reflecting full fee simple market value." However, after evaluating the evidence, the circuit court determined that MaRous's analysis was deficient.

¶65 The circuit court observed that "there is no testimony that any of [the distressed properties] were put on the traditional real estate market for sale for the normal exposure time before they were placed as an asset into a receivership." Without an explanation from MaRous, the circuit court stated that it "simply does not know whether the amount obtained on the traditional non-receivership open market would have been the same or different if no receivership was in place and Mr. MaRous did not adequately explain why the receivership itself doesn't matter or is irrelevant as it relates to that concern." The circuit court further did not accept MaRous's valuation because of the sheer amount of weight his analysis placed on the distressed sales:

26

The Court might be able to overlook one comparable sale in receivership or under possible duress as an outlier if it was able to put that outlier in the context of five other properties without significant flaws, not in receivership, with similar adjusted values. However, the Court cannot do so here because of the number of properties in receivership and the flaws of the other non-receivership comparable sales.

¶66 In contrast, the comparable properties presented by the City's appraiser, Chapko, were not dark or distressed.[15] Instead, all of these properties were occupied at the time of sale. Additionally, Chapko testified that there was no duress involved in any of the sales, none were bank-owned or in bankruptcy, and all were exposed to the open market for a sufficient period of time.

¶67 Although it recognized that "Chapko's analysis also has flaws," such as his "less than ideal" use of multi-tenant shopping centers, the circuit court found that Chapko made adjustments that "are reasonable, sufficient, and credible" to account for differences in the comparable properties and the

---

[15] These properties were all occupied and included Shopko stores in Madison, Monona, and West Bend; a multi-tenant big-box building in Grand Chute; a big-box building in Milwaukee divided into two units, one leased to Pick 'n Save and the other to Kohl's; a multi-tenant shopping center in Racine anchored by Hobby Lobby, DSW, Bed Bath & Beyond, and T.J. Maxx; and a Mills Fleet Farm store in Hudson.

Chapko did not use all of the same properties as comparables for his 2017 appraisal as he used for the 2016 appraisal, instead updating the 2017 appraisal with two new sales that occurred in 2016 and discarding the two oldest sales from the 2016 appraisal. This list reflects the properties used in both the 2016 and 2017 appraisals without differentiating between the two.

subject property. Foremost in the circuit court's determination of the credibility of the dueling appraisals was the experts' differing methodologies and specifically their differing reliance on dark and distressed properties: "Maybe most importantly, [Chapko] did not use any properties, much less half of his properties that were subject to a receivership or could otherwise be argued as being distressed. Nor did he use any 'dark' properties." Thus, the circuit court found "[Chapko's] opinion credible under the circumstances."

¶68 It is in the province of the circuit court as the trier of fact to make determinations of the weight and credibility of evidence. Metro. Assocs., 379 Wis. 2d 141, ¶61; Lessor v. Wangelin, 221 Wis. 2d 659, 665, 586 N.W.2d 1 (Ct. App. 1998) ("When the trial court acts as the finder of fact, it is the ultimate arbiter of the credibility of the witnesses and of the weight to be given to each witness's testimony."). On review, such a determination will only be overturned if it is clearly erroneous. Metro. Assocs., 379 Wis. 2d 141, ¶62. Here, the circuit court made a determination that "the evidence presented by Lowe's in this case is significantly less credible than that presented by the City when it comes to a proper value to be attached to this real estate for the years 2016 and 2017."

¶69 On this record, we cannot conclude that the circuit court's factual findings, including its credibility determinations, were clearly erroneous. The circuit court examined MaRous's conclusions and methodology and ultimately determined that the City's proffered testimony and proposed

28

valuation were more credible. Such a determination was not "against the great weight and clear preponderance of the evidence." See id. Rather, the circuit court's determination has support in the record as explained above.

¶70 We emphasize that our determination is based on the facts and circumstances presented to the circuit court, and the circuit court's evaluation of those facts and circumstances. At oral argument before this court, the parties agreed that the Manual does not create a categorical bright-line rule against the use of vacant properties in the assessment of occupied properties. Indeed, counsel for the City advanced: "I don't think there is this bright-line categorical exclusion" and "[t]here is no bright-line rule that says vacant properties cannot be used."

¶71 Consistent with the parties' agreement, we do not read the Manual to strictly prohibit the use of vacant properties as comparable to occupied properties. The language of "should avoid" is not mandatory. Cf. Village of Elm Grove v. Brefka, 2013 WI 54, ¶23, 348 Wis. 2d 282, 832 N.W.2d 121 (explaining that the word "shall" is presumed mandatory). We acknowledge that the Manual does not provide specific guidance on when a vacant, dark, or distressed property may be meaningfully comparable to an occupied property. However, we take the "should avoid" language to mean that the comparability of vacant properties to occupied properties exists along a continuum depending upon how long the property has been vacant as compared to the normal exposure time for a property of that type in the

29

same geographic area. We emphasize that the Manual urges assessors to use caution in utilizing such comparables, as the economics underlying a vacancy may be indicative of a meaningful difference in the circumstances of the properties.

¶72 Accordingly, we determine that Lowe's failed to demonstrate that the City's assessments were excessive. Giving deference to the circuit court's factual findings, including its credibility determinations, we conclude that Lowe's did not provide significant contrary evidence sufficient to overcome the presumption of correctness.

IV

¶73 In sum, we determine that the assessments in this case were properly afforded a presumption of correctness. Pursuant to Wis. Stat. § 70.49(2), the presumption attaches upon the filing of the assessment along with the assessor's affidavit.

¶74 We further determine that Lowe's failed to demonstrate that the City's assessments were excessive. Giving deference to the circuit court's factual findings, including its credibility determinations, we conclude that Lowe's did not provide significant contrary evidence sufficient to overcome the presumption of correctness.

¶75 Accordingly, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶76 REBECCA GRASSL BRADLEY, J. *(concurring)*. The circuit court properly afforded the City of Delavan's 2016 and 2017 property assessments a presumption of correctness under Wis. Stat. § 70.49(2), and Lowe's did not demonstrate the City's assessments were excessive under Wis. Stat. § 74.37. Accordingly, the court correctly affirms the decision of the court of appeals. I write separately because the majority melds the circuit court's conclusions of law and findings of fact into nothing more than a credibility determination to which it accords deference. The standard of review instead demands independent review of circuit courts' conclusions of law in cases concerning property tax assessments.

¶77 In challenging the City of Delavan's property assessments, Lowe's submitted an alternative tier-2 sales-comparison assessment conducted by Michael MaRous. That assessment identified six properties MaRous deemed comparable to the Lowe's store in Delavan. The circuit court rejected MaRous's assessment, determining none of the properties were comparable to the subject property. Of the six, the court deemed three distressed, two dark, and one generally noncomparable to the subject property. The court ultimately concluded Lowe's did not present "significant contrary evidence" to overcome the presumption of correctness afforded the City's assessment.

¶78 The majority characterizes the circuit court's conclusion as a "credibility determination." Majority op., ¶5.

1

As a result, the majority gives the circuit court's conclusion blanket deference. The majority's characterization is incorrect and its deference therefore misplaced. The circuit court's conclusion that Lowe's did not overcome the presumption of correctness is grounded in law, rather than a fact-bound credibility determination. To reach that conclusion, the court deemed the properties in MaRous's assessment to be dark, distressed, or generally noncomparable. Whether a property is dark, distressed, or generally noncomparable presents a question of law subject to independent review, and the circuit court's conclusions of law are not entitled to deference on appeal. If appellate courts defer to circuit courts' legal conclusions in property tax assessment cases, taxpayers will lose any avenue for meaningful appeal.

¶79 "When the question on appeal is whether a statutory concept embraces a particular set of factual circumstances, the reviewing court is generally presented with a mixed question of fact and law." Pabst Brewing Co. v. City of Milwaukee, 125 Wis. 2d 437, 444, 373 N.W.2d 680 (Ct. App. 1985) (citing Nottelson v. DILHR, 94 Wis.2d 106, 115-16, 287 N.W.2d 763 (1980)); see also Am. Fed'n of State, Cnty., & Mun. Emps. Loc. 1901 v. Brown Cnty., 146 Wis. 2d 728, 739-40, 432 N.W.2d 571 (1988). Questions of fact address "who did what, when or where, how or why." U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC, 538 U.S. __, 138 S. Ct. 960, 966 (2018). Questions of law ask whether the facts found satisfy the relevant legal standard. Id. We "uphold a circuit court's

2

findings of fact unless they are clearly erroneous," but independently review questions of law. <u>Langlade County v. D.J.W.</u>, 2020 WI 41, ¶¶24-25, 391 Wis. 2d 231, 942 N.W.2d 277; <u>see also</u> <u>Stern v. Thompson & Coates, Ltd.</u>, 185 Wis. 2d 220, 236, 517 N.W.2d 658 (1994) (explaining when reviewing mixed questions this court will not upset findings of fact unless they are clearly erroneous but will review conclusions of law independently).

¶80 Property assessment cases like this one typically involve competing valuations accompanied by testimony of the assessors in support of their own. "Where there is conflicting testimony the fact finder is the ultimate arbiter of credibility," and this court will therefore defer to the circuit court's findings of fact unless they are clearly erroneous. <u>Adams Outdoor Advert., Ltd. v. City of Madison</u>, 2006 WI 104, ¶27, 294 Wis. 2d 441, 717 N.W.2d 803. Whether property valuations comport with the law, however, is a question of law, not fact. Wisconsin Statute § 70.32(1) provides that "[r]eal property shall be valued by the assessor in the manner specified in the Wisconsin property assessment manual. . . ." Whether the city complied with Wis. Stat. § 70.32 "in making its assessment is a question of statutory interpretation that we review de novo." <u>Adams Outdoor Advert., Ltd.</u>, 294 Wis. 2d 441, ¶26. Appellate courts "independently review whether a valuation complied with the statutes and the Wisconsin Property Assessment Manual." <u>Bonstores Realty One, LLC v. City of Wauwatosa</u>, 2013 WI App 131, ¶6, 351 Wis. 2d 439, 839 N.W.2d 893. Accordingly,

3

whether an assessor properly deemed a property "dark" within the meaning of the Manual presents a mixed question of fact and law.

¶81 To decide whether a property is dark, a circuit court must make findings of fact regarding how long properties similar to the subject property typically sit vacant and how long the assessed property had been vacant. 1 Wisconsin Property Assessment Manual 9-12 (2016). After making such findings, the court must determine whether the property has sat vacant beyond the period of time similar properties remained vacant. Id. If it has, the relevant property is dark and therefore not likely to be comparable to the subject property. See id. Because factual findings underlie the legal determination of whether a property is "dark," the question is neither purely legal nor purely factual. It presents a mixed question of fact and law.

¶82 How long the assessed property and comparable properties have sat vacant are questions of fact because they address what has happened. We therefore reverse those findings only if clearly erroneous. Whether the period of vacancy for the assessed property renders it "dark" presents a question of law because it entails application of the law to the facts surrounding the vacancy of comparable properties compared with the vacancy of the assessed property. In this case, applying the law to the facts yielded an obvious answer. The circuit court needed to decide only whether four years, the length of time two comparable properties in MaRous's assessment sat vacant, is longer than three years, the length of time properties similar to the assessed property typically sit

4

vacant. However simple that analysis might be in this case, it should be reviewed independently.

¶83 The majority defers to the circuit court's conclusion that certain properties used by MaRous are dark, even though that conclusion involves the application of law to the facts. Majority op., ¶¶68-69. While having no effect on the outcome of this case——the circuit court was correct that four years is longer than three years——such unfettered deference may deprive a taxpayer of the opportunity for meaningful appeal in a closer or more complex case.

¶84 A more complex case is bound to arise. According to the Manual, comparable properties are those "similar to the subject property in age, condition, use, type of construction, location, design, physical features and economic characteristics." 1 Wisconsin Property Assessment Manual 7-24 (2016). Even in this relatively straightforward case, the circuit court deemed one of the properties on which MaRous relied (a former Lowe's store in Brown Deer) generally noncomparable. To reach that conclusion, the circuit court analyzed that store's sale price, financial condition, and contracts with the City of Brown Deer. In doing so, the circuit court found "financial abnormalities," based on which it deemed the store generally noncomparable with the subject property. Similar to deciding whether a property is dark, determining whether a property is generally noncomparable presents a question of law entailing the application of law to the facts. Such questions of law may be more challenging than deeming a

5

property dark. Appellate courts must not defer to circuit courts' determinations on such questions.

¶85 Given the rigor of general-comparability analyses, circuit courts might err in performing them. Nevertheless, the majority gives the circuit court's general-comparability analysis deference, misconstruing its conclusions of law to be findings of fact. In cases like this, appellate courts must review such questions of law independently. If the power to tax is the power to destroy,[1] taxpayers must have access to meaningful appeal when challenging property tax assessments.

¶86 I am authorized to state that Justice PATIENCE DRAKE ROGGENSACK joins this concurrence.

---

[1] <u>McCulloch v. Maryland</u>, 17 U.S. (4 Wheat.) 316, 431 (1819).