# COURT OF APPEALS
## DECISION
## DATED AND FILED

## November 28, 2023

Samuel A. Christensen
Clerk of Court of Appeals

## NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. **2023AP1239**
**2023AP1240**
**2023AP1241**
**2023AP1242**
STATE OF WISCONSIN

Cir. Ct. Nos. 2020TP107
2020TP108
2020TP109
2020TP110

IN COURT OF APPEALS
DISTRICT I

---

IN RE THE TERMINATION OF PARENTAL RIGHTS TO T.A., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

       PETITIONER-RESPONDENT,

   V.

T.J.,

       RESPONDENT-APPELLANT.

---

IN RE THE TERMINATION OF PARENTAL RIGHTS TO T.J., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

       PETITIONER-RESPONDENT,

   V.

---

**T.J.,**

     **RESPONDENT-APPELLANT.**

---

**IN RE THE TERMINATION OF PARENTAL RIGHTS TO T.A., A PERSON UNDER THE AGE OF 18:**

**STATE OF WISCONSIN,**

     **PETITIONER-RESPONDENT,**

    **V.**

**T.J.,**

     **RESPONDENT-APPELLANT.**

---

**IN RE THE TERMINATION OF PARENTAL RIGHTS TO T.J., A PERSON UNDER THE AGE OF 18:**

**STATE OF WISCONSIN,**

     **PETITIONER-RESPONDENT,**

    **V.**

**T.J.,**

     **RESPONDENT-APPELLANT.**

---

APPEALS from orders of the circuit court for Milwaukee County: MARSHALL B. MURRAY, Judge. *Affirmed*.

2

¶1    GEENEN, J.[1]  Tony appeals the orders of the circuit court terminating his parental rights to Tisha, Troy, Tina, and Todd.[2]  Tony argues that the court erroneously admitted three separate pieces of hearsay evidence.  He also contends that, with respect to Troy, Tina, and Todd, there was insufficient evidence to support the jury's conclusion that the Department of Milwaukee Child Protective Services (DMCPS) made reasonable efforts to provide Tony with court-ordered services (specifically, family therapy).  Finally, Tony argues that the circuit court erroneously exercised its discretion in Tisha's case when it terminated his parental rights based, in part, on a misunderstanding of the permanency of her current foster care placement.  Upon review, we affirm.

## BACKGROUND

¶2    On October 6, 2017, DMCPS received a referral that Sherry, the mother of the children subject to this appeal, was twenty-five weeks pregnant with Todd, and in the hospital complaining of abdominal pain.  During the appointment, she disclosed that she felt unsafe at home with Tony because of how aggressive he was.  Hospital staff observed Tony in the waiting room yelling at their children, pulling them up by their limbs, grabbing their hair, and spanking

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

These matters were handled together by the circuit court and this court's review of the records and briefs indicates that consolidation on appeal is appropriate.  *See* WIS. STAT. § 809.10(3).

[2]  For ease of reading and to protect the confidentiality of these proceedings, we use pseudonyms to refer to the parties in this case.

them. Staff contacted the police who arrested Tony for disorderly conduct. At the time, Tisha was four years old, Troy was three, and Tina was one.

¶3 DMCPS went to the home to investigate the referral and discovered a pattern of abuse between Tony and Sherry that the children routinely witnessed. Due to the ongoing domestic violence and other concerns, Tisha, Troy, and Tina were placed in out-of-home care.[3]

¶4 On December 31, 2017, DMCPS learned that Sherry had given birth to Todd at home. The fire department was dispatched to the home but was denied access to the child; Tony had earlier fled with Todd to Illinois where Todd was immediately hospitalized over concerns of hypothermia and breathing difficulties. Tony and Sherry were subsequently taken into custody and charged with child neglect. On January 2, 2018, Todd was placed in out-of-home care upon being discharged from the hospital; he has never lived with Tony. On March 20, 2018, the circuit court entered Children in Need of Protection or Services (CHIPS) dispositional orders for each of the children, placing them in out-of-home care, where they have remained throughout the duration of the CHIPS cases. The orders listed ten conditions Tony was expected to satisfy for the return of the children to his care, and, among other things, required DMCPS to "make reasonable efforts" to provide individual and family therapy.

¶5 On June 4, 2020, the State filed petitions to terminate Tony's parental rights to the children. The petitions alleged that grounds existed to

---

[3] Another of Sherry's children not subject to this appeal was also placed in out-of-home care.

terminate Tony's parental rights because he failed to assume parental responsibility under WIS. STAT. § 48.415(6) and because the children remained in need of protection or services under § 48.415(2). A jury trial as to the grounds of Tony's TPR petitions was held on July 11-15, 2022.[4]

¶6 Seven witnesses, including the children's then-current case manager (M.M.), former case managers (E.B., G.L., and K.F.), and Tony testified at the trial and about Tony's relationship with his children and his progress toward meeting the conditions of return. The evidence as to the continuing CHIPS ground under WIS. STAT. § 48.415(2), and Tony's progress toward meeting the ten CHIPS conditions of return is summarized herein.

## I. Continuing CHIPS

¶7 The first condition required that Tony not allow violence in the home or in front of the children. Tony attended domestic violence counseling early in the case, however, in the year before the grounds trial, Sherry obtained a restraining order against Tony, which he was subsequently charged with violating. In addition, six months prior to the hearing and in front of the other children, Tony "struck" Tisha with a toy during a visit, causing visits to be suspended.

¶8 The second condition required that Tony always supervise the children and place the children's needs first. Case managers testified that Tony was unable to control the children's behaviors, resulting in outbursts that caused his visits with the children to end early. Additionally, Tisha and Troy were

---

[4] The circuit court defaulted Sherry as to grounds for failing to personally appear at multiple hearings after having been ordered to do so.

diagnosed with ADHD/PTSD and autism, respectively, and case workers expressed concern about Tony's opposition and response to concerns about the children's mental health needs, noting that he becomes "very verbally aggressive" when the subject comes up and denies that the children have any mental health issues or need medication.

¶9     The third condition was to have age-appropriate expectations of the children. Testimony highlighted instances in which Tony failed to recognize and address his children's behavior and specific needs, and his reactions to and frustration with his children's behaviors, leading case workers to conclude Tony did not understand the emotional needs and capabilities of his children. For example, Tony failed to adhere to case worker instructions to remind and assist Troy to use the bathroom which resulted in Troy having multiple bathroom accidents. Additionally, Tony was unable to consistently handle Tisha's violent behaviors without visitation workers' assistance, and he responded to the children's disruptive behaviors by yelling and, once, threatening Troy with a belt.

¶10    The fourth condition required Tony to keep a safe, clean home. While former case managers testified that Tony had met the condition in the past, at the time of the hearing, Tony was living in his van and homeless.

¶11    The fifth and sixth conditions required that Tony control his mental health and his emotions, respectively. While Tony engaged in individual therapy at times, he did not attend therapy regularly, and refused to reengage in individual therapy after he struck Tisha. Case managers described ongoing concerns about Tony's yelling and anger management, and his escalation of difficult situations with the children during visits. In addition, case managers testified that Tony's

communications with them indicated difficulty in controlling his emotions. During phone calls, Tony yelled at, cursed at, or cut off case managers and became so problematic that case managers limited communications with Tony to email, text message, or at team meetings.

¶12    The seventh condition required that Tony meet the children's mental health needs. Case managers testified that Tony did not believe or understand Troy's and Tisha's mental health diagnoses despite regular conversations with him about the children's evaluations, diagnoses, treatment, and access to the evaluations and doctors. Tony did not attend appointments or a meeting with doctors set specifically to discuss Troy's neuropsychological testing and results. Tony testified that he does not believe in psychiatric medication for children. And, during visits when Tony was to give Tisha her prescribed medication, he admitted that he did not; he was instead "pocketing [her] medication."

¶13    The eighth and ninth conditions required that Tony control his drug or alcohol addiction, and understand how drug or alcohol addiction affects his children, respectively. In late 2021, Tony was arrested and charged in Racine County for possession of methamphetamine and the case remained open during the grounds hearing. Throughout 2022, Tony declined to take a drug test at the case manager's request and refused to consent to the release of drug test results or the alcohol and drug abuse assessment he completed related to the Racine case. It was not until the week before the grounds trial that Tony provided his consent, but he failed to provide the contact information necessary to facilitate the release.

¶14    There was also testimony about the tenth condition, provide safe care for the children. Aside from his homelessness at the time of the hearing, case

7

managers did not believe that Tony made the necessary changes to show that he could parent the children. In particular, he had not demonstrated that he was willing to understand and capable of meeting the children's special needs and never progressed beyond fully supervised visits with the children.

¶15 Case managers also testified about DMCPS's efforts to provide individual and family therapy, among other services, to Tony and the children. Case managers testified that the children's ages and their therapists' recommendations played a role in the services offered. More specifically, case managers testified that the children were aged newborn to five when removed from the home, so therapy was not immediately age-appropriate. Tisha soon began individual therapy and Troy, the second oldest child, began individual therapy when it was appropriate. Tina and Todd—both still under age five—were too young for therapy. Tisha's and Todd's therapists recommended that the children process their past trauma, individually, before beginning family therapy. K.F. testified that she did not refer Tony to family therapy until the children's therapists recommended it. Eventually, and in response to Tony's request, Tisha's therapist recommended family therapy between Tony and Tisha, which ended after three sessions when Tisha became "very, very upset" with the therapist and asked to never see the therapist again.

## II. Failure to Assume Parental Responsibility

¶16 The second basis for termination was the failure to assume parental responsibility ground under WIS. STAT. § 48.415(6). While Tony's testimony established that he had recently become more involved in his children's lives and medical care, case managers testified that Tony did not exercise responsibility for

the daily supervision, education, or protection of the children, and that despite five years of CHIPS, Tony never progressed beyond supervised visits with the children due to lack of progress towards his conditions for return. Furthermore, case managers expressed concerns about Tony's ability to handle all of the children, his responses to the children's behaviors, his own escalation behaviors, and his continued refusal to acknowledge their medical and mental health conditions.

¶17    The jury found that the State met its burden with respect to both grounds. One juror dissented on the verdict question as to whether the State provided "reasonable services" and, therefore, to the CHIPS ground. Two jurors dissented as to the failure to assume responsibility. The circuit court subsequently found Tony unfit pursuant to WIS. STAT. § 48.424(4).

¶18    The case proceeded to a multi-day dispositional hearing at which Tony did not appear. The circuit court considered all of the statutory factors and criteria at WIS. STAT. § 48.426. Tisha, unlike Troy, Tina, and Todd, was not placed with an adoptive resource. With respect to permanency concerns and alternatives, the court found that Tisha was adoptable and "flourishing" in a home in which her needs were being met, that she considered her foster parent to be her family, and that there were no impediments to adoption. It found that, although the foster parent does not intend to adopt Tisha, the foster parent would provide a permanent home unless and until an adoptive resource is found. Finally, the court acknowledged that a non-adoptive other planned permanent living arrangement was not a perfect permanency option, but that granting the TPR petition would enable Tisha to enter into a more stable and permanent family.

¶19     The circuit court found that it was in the children's best interest to terminate Tony's parental rights, and orders to that effect were entered on February 21, 2023.  Tony appeals.

## DISCUSSION

¶20     Tony raises several issues on appeal.  First, he argues that the circuit court erred when it overruled three hearsay objections and contends that, had the testimony not been admitted, there is a reasonable probability of a different result at the grounds phase.[5]  He further contends that insufficient evidence supports the jury's verdicts on grounds as to Troy, Tina, and Todd because DMCPS did not make reasonable efforts to facilitate family therapy and, therefore, the jury's verdict should be vacated.  Tony's final argument is that the circuit court erroneously exercised its discretion in Tisha's case when it terminated his parental rights, and thus, its decision should be reversed.  As noted above, we disagree.

### I.      Tony's Hearsay Objections

¶21     The admissibility of evidence generally falls within the discretion of the circuit court.  ***State v. Peters***, 166 Wis. 2d 168, 175, 479 N.W.2d 198 (Ct. App. 1991).  However, the application of the hearsay rules embodied in WIS. STAT. ch. 908 to undisputed facts is a question of law that we review de novo.  ***Id.***; *see*

---

[5] Termination of parental rights cases consist of two phases: a grounds phase to determine whether there are grounds to terminate a parent's rights, and a dispositional phase, which determines whether termination is in the child's best interest.  ***Sheboygan Cnty. DHHS v. Julie A.B.***, 2002 WI 95, ¶¶24-28, 255 Wis. 2d 170, 648 N.W.2d 402.  If grounds are found by the jury, the parent is found "unfit," WIS. STAT. § 48.424(4), and the case moves to the dispositional phase.  ***Steven V. v. Kelley H.***, 2004 WI 47, ¶26, 271 Wis. 2d 1, 678 N.W.2d 856.

*also **Palisades Collection LLC v. Kalal**, 2010 WI App 38, ¶14, 324 Wis. 2d 180, 781 N.W.2d 503 (holding that "not all evidentiary rulings are discretionary," for example, when "an evidentiary issue requires construction or application of a statute to a set of facts" it creates a "question of law" subject to de novo review).

¶22    During the State's examination of G.L., it asked if she had concerns about communicating safely with Tony.  She responded, "Based on the information I had, at times, yes."  When asked what concerned her, she responded, "Well, the reason why I even received this case or was assigned this case was because of his behavior ...."  The State asked what behavior G.L. was referring to, and she responded, "Making threats to workers, raising his voice, the foster parents were reporting that—"; at this point, Tony objected.  A sidebar was held and the objection was overruled.  G.L. continued her answer:

> "So yes, based on the information I had when I was first assigned, I knew that the case had come in for reasons of like domestic violence and from me being assigned as a result of [Tony] showing up to the foster parents' home unannounced, threatening to take the kids, threatening the worker, raising his voice, it just seemed like his behavior would escalate."

The State next asked G.L. if the information influenced how she communicated with Tony.  She stated that it did not, and the line of questioning ended.

¶23    "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  WIS. STAT. § 908.01(3).  G.L.'s statements were offered to show the circumstances under which she received her assignment and how she approached and handled the case, not to prove Tony's behavior.  Accordingly, this testimony was not hearsay.

11

¶24 Tony next contends that the court erred when it allowed K.F. to testify that Sherry told her that Tony was contacting her via text messages. Specifically, trial counsel objected when K.F. stated, "[Sherry] would call me when stuff was coming to her phone and then she asked me to go to the police with her[.]"[6] The objection was overruled, and K.F. continued, "So she asked me to go to the police office with her to file a report and showed the police like different pictures she has saved on her phone messages from him."

¶25 K.F.'s testimony was not hearsay. Where a declarant's statement is offered for the fact that it was said and the effect it had rather than for the truth of its content, it is not hearsay. *State v. Wilson*, 160 Wis. 2d 774, 779, 467 N.W.2d 130 (Ct. App. 1991). K.F.'s testimony was not offered to prove the content of the messages from Tony or even that messages occurred, but rather, it was offered to explain why K.F. accompanied Sherry to the police station.

¶26 Third, the guardian ad litem asked K.F. about a time when Tony made ninety-six phone calls to a foster parent. The exchange went as follows:

> Q.: There was an incident early on when you were the case manager where there were 96 phone calls made by [Tony]?
>
> A.: Yes.
>
> Q.: Why do you remember that?
>
> A.: Because I only had the case for a couple days and I mean, it was the foster parent called us and—
>
> [TONY'S TRIAL COUNSEL]: Objection, hearsay.

---

[6] Trial counsel did not object to K.F.'s testimony that Tony contacted Sherry in violation of a no-contact order.

The court overruled the objection and K.F. continued: "The foster parent called and because I was brand new to the case we went and talked to [a supervisor] to let her know what was going on and she called [Tony] to talk about it."

¶27 The contested testimony is not hearsay. As to the entire exchange, K.F.'s testimony was not offered to prove the truth of the matter asserted (i.e., Tony's behavior) but to explain how K.F. handled the case.

¶28 The circuit court appropriately overruled Tony's hearsay objections.

## II.    Harmless Error

¶29 Tony contends that the purported hearsay testimony painted him as aggressive, threatening, and irrational, allowing the jury to hear evidence of "even worse behavior" than the testifying social workers experienced themselves from Tony. Tony argues that the cumulative effect of the circuit court's hearsay rulings were not harmless, and that if the testimony had not been admitted, there is a reasonable probability of a different result at the grounds trial. We do not agree. Even if the testimony Tony challenges constitutes inadmissible hearsay, the errors were harmless, individually and cumulatively.

¶30 Under WIS. STAT. § 805.18(2), no judgment shall be reversed or set aside or a new trial granted in any action or proceeding on the ground of the improper admission of evidence unless "after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial." To establish that a party's rights were substantially affected,

13

the appellant must show that the error contributed to the outcome of the action. *Evelyn C.R. v. Tykila S.*, 2001 WI 110, ¶28, 246 Wis. 2d 1, 629 N.W.2d 768.

¶31    The jury was asked whether Tony "failed to meet the conditions established for the return of the [children] to the home," and whether Tony "failed to assume parental responsibility" for the children.  It answered both questions in the affirmative as to each child.  Evidence, described above, supported the jury's verdict.  The alleged hearsay statements showed that Tony sometimes displayed aggression towards case workers and Sherry, but other non-hearsay evidence independently supported the same conclusion.  Case managers testified about their first-hand experience with Tony's aggressive behaviors.  Tony testified that "most" of the messages sent to Sherry were not sent by him, implying that some were sent by him.  In addition, there was testimony that Sherry obtained a no-contact order against Tony and that Tony was charged with violating that order, and that the children's foster placements were subject to a nondisclosure order as a result of Tony's conduct.

¶32    The three challenged statements have little to no bearing on either of the grounds for termination of parental rights.  They involve Tony's interactions with case workers and Sherry, not the children.  It is not clear what relevance these statements have to any of the conditions set forth in the CHIPS order and whether Tony met the conditions, nor what bearing these statements have on whether Tony failed to assume parental responsibility for the children.

¶33    It is illogical to conclude that the jury would have relied upon these alleged hearsay statements to form a basis for either Tony's failure to assume parental responsibility (i.e., whether he has a substantial parental relationship with

14

the children), Tony's failure to meet the conditions of the CHIPS order, or efforts made by DMCPS to provide services to Tony.

¶34 Accordingly, we conclude that even if the circuit court erroneously admitted the three alleged hearsay statements, these errors were harmless.

### III. Reasonable Efforts to Provide Family Therapy

¶35 Tony argues that there was insufficient evidence for the jury to conclude that DMCPS made "reasonable efforts" to provide the services ordered by the court in the CHIPS dispositional order. In particular, Tony argues that DMCPS failed to make reasonable efforts to provide family therapy for Tony and the children. We disagree.

¶36 Review of a fact-finder's determination of grounds and the determination of whether the evidence presented to a jury was sufficient to sustain its verdict is a question of law. *State v. Booker*, 2006 WI 79, ¶12, 292 Wis. 2d 43, 717 N.W.2d 676. Appellate review of a jury verdict is narrow; we will sustain a jury verdict if there is any credible evidence to support it. *Morden v. Continental AG*, 2000 WI 51, ¶¶38-39, 235 Wis. 2d 325, 611 N.W.2d 659. This court will affirm if there is any credible evidence upon which the jury could have based its decision, even if there is more than one particular inference that could have been reached by the jury. *Id*.

¶37 At the grounds trial, the special verdict form for continuing CHIPS required the jurors to answer, for each child: "[H]as [DMCPS] made reasonable efforts to provide the services ordered by the Court?" Only if the jury determined that such reasonable efforts were made was the jury to consider whether the parent

failed to meet the conditions established for the return of the children to the home. With respect to all four children, five of the six jurors concluded that reasonable efforts were made, and the CHIPS conditions of return not satisfied.

¶38 Among other things, the jury heard case managers testify about Tony's lack of involvement in the children's appointments, the ages of the children, the children's therapists' recommendations about family therapy, and the eventual referral to family therapy for Tony and Tisha. Credible evidence supports the jury's verdict that DMCPS made reasonable efforts to provide family therapy to Tony and the children.

## IV. Tisha's Placement

¶39 Tony argues that the circuit court erred when it found that terminating his parental rights would allow Tisha to enter into a more stable and permanent family relationship. Specifically, he argues that the court misunderstood the nature and permanency of Tisha's current placement and asserts that there is no evidence Tisha's foster parent would provide Tisha permanent home. For this reason, he argues that the court's decision to terminate his parental rights was an erroneous exercise of discretion. We disagree.

¶40 A circuit court's decision to terminate parental rights is discretionary. *Gerald O. v. Cindy R.*, 203 Wis. 2d 148, 152, 551 N.W.2d 855 (Ct. App. 1996). The circuit court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law and, using a demonstrated rational process, reaches a conclusion that a reasonable judge could reach. *Id.* at 152. Its findings of fact will not be set aside unless clearly erroneous. *Id.* at 152-53 (citing WIS. STAT. § 805.17(2)). A finding of fact is clearly erroneous if it is

against the great weight and clear preponderance of the evidence. ***Lowe's Home Ctrs., LLC v. City of Delavan***, 2023 WI 8, ¶25, 405 Wis. 2d 616, 985 N.W.2d 69.

¶41 The circuit court evaluated and weighed the six statutory factors enumerated at WIS. STAT. § 48.426(3) before terminating Tony's parental rights to the children. One of those factors requires the court to consider "[w]hether the child[ren] will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child[ren]'s current placement[s], the likelihood of future placements and the results of prior placements." Sec. 48.426(3)(f).

¶42 The circuit court described Tisha's current foster placement and her foster parent's willingness to provide a home for Tisha until DMCPS finds an adoptive resource for Tisha. It considered the other available options. The circuit court considered all of the factors in determining Tisha's best interests and its factual findings regarding Tisha's placement are supported by evidence; the circuit court reasonably exercised its discretion in granting the TPR. *See **Gerald O.***, 203 Wis. 2d 148, 152-153.

¶43 Accordingly, pursuant to our review, we reject Tony's arguments on appeal and affirm the circuit court's orders terminating Tony's parental rights to Tisha, Troy, Tina, and Todd.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.